-ecutor or administrator, holds the stock as the property of the estate, and the stock has not been transferred on the books of the bank, and the liability has not been dis-charged by some act which shows that the new stockholder has taken the place of the old one, the contract liability still adheres to the estate. This liability is not the result of any new contract, for the administrator did not voluntarily become the owner of the stock; it came to him as the dispenser of the goods of the dead, and the liability rest-ed upon the stock, and was a part of the con-tingent liability of the estate, at least until it was transferred to some other person by a transfer free from fraud. Corning v. Mc-Cullough, 1 Comst. [1 N. Y.] 47; Bailey v. Hollister, 26 N. Y. 112; Lowry v. Inman, 46 N. Y. 119; Hawthorne v. Calef, 2 Wall. [69 U. S.] 22; Gray v. Coffin, 9 Cush. 192.

3. When an obligation devolves upon an executor solely by virtue of his successor-ship to the estate, and not by express con-tract or agreement of his own, the estate is liable. If an executor is liable to pay an obligation resting upon personal property, which came to him from the testator, and of which the executor is the owner only as a representative of the estate, and which obli-gation is due from him solely because he represents the estate, he is liable as exec-utor, even if suit might have been also brought against him personally. East Hart-ford v. Pitkin, 8 Conn. 404, per Williams, J.

4. I do not think that section 5152 was in-tended to affect the liability for assessments of estates in process of settlement. The principal object of the section was to prevent a personal liability from running against ex-ecutors, administrators, trustees or guard-ians who had purchased as trustees, or to whom had been transferred in their names, as trustees of national bank stocks for the benefit of the trust estates. Having by such purchase voluntarily entered into a contingent liability for assessments, it might be claimed that a judgment de bonis pro-priis could be rendered against them. The main object of the section was to prevent personal judgments being rendered against such persons in whom the stock stood on the books of the bank, as trustees.

I am therefore of opinion that the facts al-leged in the plea are not a valid defence to prevent a judgment against the defendant from the estate of the intestate. As it is not suggested that the defendant has any other ground of defence, the demurrer is sustained, and judgment should be rendered against him as administrator de bonis non, from the estate of the intestate, for the sum of $10,280, with interest on $5,140 thereof from February 26th, 1877, and on $5,140 thereof from April 26, 1877, at six per cent.

DAVIS (WEST v.). See Case No. 17,422.

DAVIS (WILKINS v.). See Case No. 17,664.

## Case No. 3,659.

### DAVIS v. WOOD.

[Cited in Matilda v. Mason, Case No. 9,280. Nowhere reported; opinion not now accessible. See Davis v. Wood, 1 Wheat. (14 U. S.) 6.]

## Case No. 3,660.

### DAVIS v. WYER.

[1 Cranch, C. C. 527.][1]

Circuit Court, District of Columbia. Dec. Term, 1808.

ATTACHMENT ON ASSIGNED CAUSE OF ACTION—PARTIES.

The proceedings upon attachment, upon an as-signed cause of action, must be in the name of the legal plaintiff; and all the requisites of the statute must be complied with.

Attachment under the act of 1795, c. 56. The justice certified that William Davis made oath that the defendant is bona fide in-debted to him in the sum of $92.50, &c., ac-cording to the act, and that William Davis at the same time produced before him a mem-orandum of a settlement betwixt the said Uriah Wyer and Jacob Todhunter, which memorandum was assigned to the aforemen-tioned William Davis, by which it appeared that the said Uriah Wyer is indebted as afore-said, and upon which memorandum of a set-tlement, the said oath was granted. The memorandum produced to the clerk was in the words following: "December 8th, 1807, this —— settled with Jacob Todhunter and am due him $9250 as witness my hand. Uriah Wyer." "I do hereby assign all my right, title, claim, and interest to the above to William G. Davis. Jacob Todhunter."

F. S. Key moved (if the court should sup-pose an amendment necessary) to amend the capias ad respondendum, by striking out the name of William Davis, and inserting in lieu thereof the name of Jacob Todhunter. The capias had been returned non est. No copy of the short note had been set up, &c. The pro-ceeding by attachment is an equitable pro-ceeding. It must issue in the name of the eq-uitable plaintiff. Such has been the uniform practice in Maryland.

THE COURT (nem. con.) on motion, quash-ed the attachment. There was no evidence that a copy of the short note had been set up at the court-house door, nor that the proofs exhibited to the justice, were lodged with the clerk. The attachment was in the name of W. Davis, but the assignment of the account was to W. G. Davis. The hand-writing of Todhunter was not proved.

CRANCH, Chief Judge, said the attach-ment must be in the name of the legal plain-tiff.

DAVIS JEFFERSON, Case of. See Case No. 3,621a.

[1] [Reported by Hon. William Cranch, Chief Judge.]